Burnap *v.* Marsh et al.

FRANCIS BURNAP, Plaintiff in Error, *v.* JASON MARSH et al., Defendants in Error.

### ERROR TO OGLE.

If an attorney who commenced a suit which is alleged to be malicious, knew that there was no cause of action, dishonestly and for some sinister view, for some ill purpose, or for some purpose of his own, which the law calls malicious, caused a party to be arrested and imprisoned, he will be liable therefor.

If an attorney becomes the instrument for prosecuting and imprisoning a party against whom he knows his client has no just claim, or cause of arrest, and that his client is actuated by illegal or malicious motives, he is legally liable to the injured party.

It is not necessary to show a conspiracy between attorney and client. An attorney may so act under his general employment to enforce a legal claim, as to render himself alone liable for a malicious prosecution or arrest.

In an action against an attorney for maliciously suing out process, it is sufficient aver-

ment against him, that he falsely and maliciously, without having any reasonable or probable cause for so doing, sued out the writ, and falsely and maliciously caused the party to be arrested under it.

The word "prosecution," in the statute of limitations, was intended by the legislature to embrace cases where a party has been maliciously prosecuted and imprisoned without cause, as well in civil as in criminal proceedings.

THIS was an action on the case for malicious arrest, &c., commenced by Burnap against Marsh and Wight, as attorneys, for suing out a writ of *ne exeat*, and causing the arrest of Burnap.

The action was commenced in the Winnebago Circuit Court, and taken by change of venue to Ogle county.

The first count of the declaration complains that defendants on, &c., at Rockford, &c., without any reasonable or probable cause for so doing, but contriving and intending to imprison, harass, oppress, and injure the plaintiff, falsely and maliciously, as the attorneys and solicitors of Jacob Alberts, John R. Moore, &c., of Baltimore, &c., sued and prosecuted out of the Circuit Court for Winnebago county, a writ of *ne exeat*, directed to the coroner of that county, commanding the coroner to summon the plaintiff to appear before said Circuit Court on, &c., to answer to a certain petition exhibited against him by the said Alberts and Moore, and at the same time to cause the said plaintiff to execute a bond with security, payable to said Alberts and Moore, in $2,000, conditioned that he would not depart the State without leave of the said court, and that he would render himself in execution to answer any judgment or decree which the said court might render against him in the premises; and in default of his giving the bond and security, to commit him to the common jail of said county, there to be kept in safe custody, until he should do so of his own accord. And the defendants contriving and intending as aforesaid, caused the writ to be and it was indorsed for bail for $2,000; and to wit, &c., contriving and intending as aforesaid, falsely and maliciously caused the plaintiff to be arrested under the writ, and to be imprisoned and kept in prison, to wit, sixty-four days, until the plaintiff, to procure his release, was forced to and did, to wit, on, &c., make and execute a bond, and procure divers sufficient persons to become sureties thereon, as and with condition required, whereas the defendants had no

reasonable or probable cause for suing forth the writ, nor for causing the plaintiff to be imprisoned; but, on the contrary, the arrest and imprisonment were wholly causeless and unlawful. And *taliter processum est* upon the petition, that on, &c., the plaintiff had the venue changed to Ogle county, and the transcript, &c., were filed in the Circuit Court for the county of Ogle; and *taliter processum est* upon the petition and suit thereon, that on, &c., it was ordered by the court that the said cause be dismissed, and that the plaintiff recover his costs *ut patet per recordum*, and the said suit was and is wholly discharged and determined. *Per quod* the plaintiff while imprisoned, not only suffered great pain of body and mind, and was greatly injured in his reputation, credit, and circumstances, and was prevented from transacting his lawful affairs and business, but was forced to and did expend, to wit, $100, and was put to great trouble and labor in obtaining his discharge from the arrest and imprisonment, and in and about other the premises, and is otherwise greatly injured and damnified.

To this first count, there was a general demurrer; and it was sustained by the court, and judgment was given thereon for the defendants.

F. BURNAP, for himself.

J. MARSH & WIGHT, for themselves.

CATON, J. This was an action on the case brought by the plaintiff against the defendants for maliciously suing out a writ of *ne exeat* against the plaintiff, and causing him to be arrested and imprisoned thereon. To the first count of the declaration, the defendants demurred. To the other counts they pleaded the statute of limitations, that the cause of action had accrued more than two years prior to the commencement of the action. To this plea the plaintiff demurred. The court sustained the demurrer to the first count of the declaration, and overruled the demurrer to the plea, and the plaintiff declining to amend his first count or reply to the plea of the statute of limitations, judgment was rendered against him. These decisions are assigned for error.

We are of opinion that the demurrer was improperly sustained

to the first count. That count was, that the defendants "without having any reasonable or probable cause for so doing, but contriving and intending to imprison, harass, oppress, and injure the said plaintiff falsely and maliciously, as the attorneys and solicitors of Jacob Alberts and others " of Baltimore, in the State of Maryland, sued and prosecuted out of the Circuit Court," &c., a writ of *ne exeat* against the plaintiff; and " contriving and intending as aforesaid, falsely and maliciously caused the said plaintiff to be arrested under and by virtue of the said writ," &c. It is not denied that in order to render the attorneys liable for suing out a writ and causing the plaintiff to be arrested thereon, something more must be shown than would be required were the action brought against the party in whose behalf the writ was sued out. The rule by which attorneys may be held liable for malicious prosecutions is clearly laid down by Tindal, C. J., in Stockley *v.* Harnidge, 34 Eng. C. L. R. 276. It was there held, that if the attorneys who commenced the suit alleged to be malicious, knew that there was no cause of action, and knowing this, " dishonestly and with some sinister view, for some purpose of their own, or for some other ill purpose which the law calls malicious, caused the plaintiff to be arrested and imprisoned," they were liable. To protect attorneys beyond this, would be authorizing those who are the most capable of mischief to commit the grossest wrong and oppression. It is true that when the attorney acts in good faith in prosecuting a claim which his client believes to be just, and is actuated only by motives of fidelity to his trust, he ought not to be held liable, although he may have entertained a different opinion as to the justice or legality of the claims. When the client will assume to dictate a prosecution upon his own responsibility, the attorney may well be justified in representing him so long as he believes his client to be asserting what he supposes are his rights, and is not making use of him to satisfy his malice. But when an attorney submits to be made the instrument of prosecuting and imprisoning a party against whom he knows his client has no just claim, or cause of arrest, and that the plaintiff is actuated by illegal or malicious motives, he is morally and legally just as much liable as if he were prompted by his own malice against the injured party. If he will know-

Burnap *v.* Marsh et al.

ingly sell himself to work out the malicious purposes of another, he is a partaker of that malice as much as if it originated in his own bosom. The attorney, then, cannot always justify himself under the instructions of his client, no matter how positive they may be. Nor is it always necessary to show a conspiracy between the attorney and client, although some courts have treated that as necessary. An attorney may so act under his general employment to enforce a legal claim, as to render himself alone liable for a malicious prosecution or arrest. In this State, it is only under particular circumstances that a debtor is liable to be arrested; and if an attorney in the course of the prosecution of a just claim, and without the instruction or knowledge of his client, and without any reasonable or probable cause for so doing, maliciously causes the debtor to be arrested, it would be monstrous to hold that he might shield himself from liability, because his client had not conspired with him to commit the wrong. Where the attorney chooses to act upon his own responsibility under his general retainer, and without specific instructions, and causes the debtor to be arrested, the act becomes his own rather than his client's, and he must see to it that he does not proceed without reasonable or probable cause, and especially where he is prompted by his malice. It will not do to turn the injured party round to seek his remedy against the client, who may be a thousand miles off and in a foreign country or distant jurisdiction, and who may not have directed the arrest, and may be entirely innocent of any wrong.

By applying these principles of responsibility, we are of opinion that enough is charged is this first count to render the attorneys liable. The charge is, that as the attorneys of Alberts and others, they falsely and maliciously, without having any reasonable or probable cause for so doing, sued out the writ, and that they, falsely and maliciously, caused the plaintiff to be arrested under the writ. If they are charged as acting as attorneys, they are charged as acting without reasonable or probable cause for them so to act, in that capacity, and the malice is charged to have been their own. The question on the trial will be, had they reasonable or probable cause, as attorneys, to sue out the writ? It may be true, that evidence which would

be sufficient to show a want of probable cause for the client, would not establish the same thing as to the attorneys; but the question before us is one of pleading, and not of evidence. It cannot, and ought not, to be said, that if it be established by proof, that the defendants sued out the writ without cause, which would justify them in so doing, and from motives of malice, and for the purpose of vexing and harassing the plaintiff, and caused him to be arrested thereon, the defendants are not liable for the injury thus wantonly inflicted. It would be a just reproach to the law, to hold, that attorneys could thus act with impunity. The pleading is sufficient, and the demurrer to the first count was improperly sustained.

Our statute of limitations provides as follows: "And every action for malicious prosecution shall be commenced within two years next after the cause of action shall have accrued, and not after." And the question is, whether this cause of action is embraced within this provision. The term *prosecution* may have a more limited, or a more extended signification, according to the intention of the lawmaker, or person using it. It was so held by this court, in the case of Donnelly *v.* The People, 11 Ill. 552, and we there held, that the word, as used in our Constitution, is to be understood in its most restricted and technical sense, and means the mode of the formal accusation of offenders. That it means criminal prosecutions.

The plaintiff contends, that it is to be understood in the same restricted sense in the statute under consideration, while the defendants insist, that it was the intention of the legislature to express, by the words "malicious prosecution," not only malicious prosecutions where the charge was of a criminal character, but also where the plaintiff has been maliciously arrested under civil process. While we find no case where there has been held to be any practical difference between a malicious prosecution for a criminal charge, and a malicious arrest in a civil suit, it is most undoubtedly true, that the term *malicious prosecution,* has been more generally applied by courts to the former class of cases, while, at the same time, it is equally true, that the same term has been often used by learned courts and elementary writers, as applying to prosecutions of civil suits, in which the

party has been maliciously arrested; and it is undoubtedly true that the same rules apply in redressing the wrong, whether the injury complained of was a malicious arrest, either on a civil or a criminal charge. In no case has any thing more than a nominal distinction been recognized, and this nominal distinction is by no means universal, even among the most technical authorities. After the most careful research, we are still left where we commenced, with the conclusion that the word *prosecution*, in its most restricted sense, applies only to criminal proceedings, while it may be properly used in a more extended sense so as to embrace civil proceedings; and we are left to determine from other considerations than any arbitrary meaning of the word, in what sense it was here used by the legislature. We are clearly of opinion, that it was not the intention of the legislature here, to use the word in its most restricted sense, and to apply it alone to prosecutions of a criminal nature, but that it was intended also to embrace cases where the plaintiff has been maliciously prosecuted and imprisoned without cause, in a civil proceeding. It must be remembered, that under our Constitution, no person can be legally imprisoned for debt alone; and it is only in cases where the debtor is fraudulently or wrongfully endeavoring to evade the payment of his debt, that he can be restrained of his liberty. The imprisonment, then, is not for the debt, strictly speaking, not for his wrongful act, in endeavoring to evade its payment. In England, and formerly in most of the States of this Union, a complete justification was always made out by showing the existence of a debt. That, of itself, was a sufficient cause for the arrest. Not so here. Even in a civil suit, it is the wrong, rather than the debt, which subjects a party to arrest. While the cause which will justify the arrest, may not be a crime, to some extent it partakes of that nature. It involves a moral delinquency, and not a mere civil liability. A malicious arrest, therefore, in this State, can never be for a debt alone, and these circumstances serve to characterize the transaction, and assimilate it much nearer to a malicious prosecution for a criminal offence, than were malicious arrests in England, where the party could be imprisoned for the debt alone.

This case is as much within the mischief designed to be

remedied by the statute, as if the prosecution had been for a crime, and being also within the expressions of the statute it is our duty to hold it to be within its meaning. The very policy of our law, which secures the person of the honest debtor inviolate, strongly leads to the conclusion, that the legislature intended to use the word in its more enlarged sense. He who fraudulently endeavors to avoid the payment of his just debt does a wrong to society, although not so great, perhaps, as he who commits a crime, yet, much more than the man who simply contracts a debt.

We are of opinion, that the demurrer to the plea of the statute of limitations was properly overruled. For the first error, however, the judgment must be reversed, and the cause remanded. *Judgment reversed.*