## JOSEPH MALCOLM

*v.*

## FRANKLIN S. ANDREWS.

1. IMPRISONMENT FOR DEBT—*constitutional provision applies to writ of ne exeat.* The provision of our constitution relating to imprisonment for debt has abolished such imprisonment as practiced under the common law, and where a debt is the basis of the action, in order to justify imprisonment, the foundation must be laid in the fact of a refusal to deliver up property for the benefit of creditors, or fraud either in contracting or evading payment of the debt. The provision is applicable to a proceeding by *ne exeat.*

2. NE EXEAT—*sufficiency of petition.* In a proceeding for *ne exeat,* the plaintiff, by analogy to the proceeding by *capias ad respondendum,* must show, by his bill or petition, by facts stated and circumstances detailed, that the debtor has been guilty of fraud, or that there is a strong presumption of fraud.

3. Where the only ground set forth in a petition for a *ne exeat* was the plaintiff's statement upon information and belief that, since the making of the note, the defendant had sold the greater part of his property and was endeavoring to sell the remainder, had threatened to leave the State, and had said he would not pay the debt: *Held,* that the facts stated were not sufficient to raise a presumption of fraud, as the property sold might have been exempt, and his declaration that he would not pay might have been based upon a defense or supposed defense.

4. In such a case, where the defendant's answer was under oath, and denied the facts charged and all fraudulent intent, and the plaintiff excepted to the same for immaterial matters stated, and the defendant moved the court to quash the writ, which was refused: *Held,* that, as the exception admitted the material facts stated in the answer, the court erred in not quashing the writ.

WRIT OF ERROR to the Circuit Court of Marion county; the Hon. SILAS L. BRYAN, Judge, presiding.

This was a proceeding in the Marion circuit court, by petition under the statute, instituted by Andrews against Malcolm for a *ne exeat.* The case made by the petition is simply that petitioner was the owner, by assignment before due, of two

promissory notes made by Malcolm on the 30th day of October, 1872, in and by each of which the latter promised to pay one G. W. Kinney $50 six months after date, with interest at the rate of ten per cent per annum, which several notes Kinney indorsed to French, who sold and delivered them to Harmon, and the latter, for a good and valuable consideration, sold and delivered the notes to petitioner; that Kinney had become insolvent.

Petitioner then states, upon information and belief, that, since said notes were made, Malcolm has sold out the greater part of his property, and is endeavoring to sell the remainder, and threatens to leave the State of Illinois and take his property with him, and says he will not pay said notes.

The petition was filed January 3, 1873, before either of the notes was due. A *ne exeat* was issued, on which Malcolm was arrested January 4, 1873, and required to give special bail.

There being no waiver of answer under oath, Malcolm put in a sworn answer, whereby he denied that he had sold property or proposed to leave the State to defraud complainant or any other person, or to defeat the collection of said notes; also setting up that the notes were obtained from him by fraud and c rcumvention, and that the consideration had wholly failed, in this, that the notes were given for a sale by Kinney to him of the exclusive right to sell a certain alleged patent medicine called " G. W. Kinney's Hog Cholera Medicine," which Kinney falsely and fraudulently represented to be good and effective in the cure of such disease; that he already had contracts with distillers to supply them to the amount of $20,000, which he would assign over to respondent. These statements were averred to have been fraudulently made; that both the right to sell and the medicine were worthless, and Kinney had no such contracts.

The answer denied that the notes were assigned in good faith, but for the purpose of more effectually defrauding respondent.

Exceptions were filed to the answer on the ground that it did not aver notice of the alleged fraud to complainant. Respondent's counsel moved the court to quash the writ of *ne exeat*, which the court overruled, sustained the exception to the answer, and gave judgment against Malcolm for the amount of the notes and interest, and he brought the case to this court by writ of error.

Mr. J. B. KAGY, and Mr. B. B. SMITH, for the plaintiff in error.

Mr. D. C. JONES, for the defendant in error.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

The petition or bill in this case was brought against the maker of two promissory notes, before their maturity, upon which a *ne exeat* was issued and plaintiff in error arrested and required to give special bail. The only ground for such arrest set forth in the petition was the complainant's statement, upon information and belief, that, since the making of the notes, plaintiff in error had sold out the greater part of his property, and was endeavoring to sell the remainder; had threatened to leave the State of Illinois, and had said he would not pay said notes. It is not alleged that he had any property which was not exempt from execution, or that the acts done or threatened were with the intent to defraud complainant or any other creditor. Unless he had property which was not exempt from execution, the mere fact of the sale of property, even with the view of removing out of the State, would not of itself raise a presumption of fraud. And in the light of the facts set up in his answer showing that the notes were obtained from him by fraud, a declaration on his part that he would not pay them, might be prompted by a sense of justice rather than a design to defraud creditors.

But we need not stop to discuss the sufficiency of the petition, for it is obvious from the record that the case was disposed of in the court below, upon the theory that the element of fraud on the part of plaintiff in error was wholly immaterial.

The petition, by not waiving it, calls for an answer under oath. An answer under oath was filed, in which the defendant expressly denied having sold his property or being about to remove from the State, for the purpose of defrauding the complainant or any other person, or of defeating the collection of the notes held by complainant.

No replication was filed, but exceptions to the answer, based upon the ground of immateriality of the matters of the answer.

An answer upon oath being called for, and one filed which denied all purposes of fraud, and to which there was no replication, the defendant's counsel made a motion to quash the writ of *ne exeat*. This the defendant, by the seventh section of the statute, was justified in doing. The court could then be properly called upon to determine whether the writ ought not to be quashed or set aside. If fraud was a necessary element for the support of the writ, it then being admitted, by excepting to the answer for immateriality, that there was no fraud, it would follow that the writ ought to be quashed. But the court overruled the motion to quash, ruled out the entire answer upon the exceptions, and rendered judgment against plaintiff in error for the amount of the notes with interest.

The question fairly presented by this record, therefore, is, whether the holder of a promissory note can lawfully maintain this proceeding against the maker, before the maturity of the note, for the purpose of having him arrested upon the process of the court, and, if he fail to put in special bail, committed to the common jail as upon a *capias ad respondendum*, and this wholly irrespective of any fraud on the part of the debtor proceeded against.

The 12th section of article 2 of the constitution declares: "No person shall be imprisoned for debt unless upon refusal to deliver up his estate for the benefit of his creditors, in such manner as shall be prescribed by law, or in cases where there is a strong presumption of fraud."

This provision, in the same language, has been incorporated in the Bill of Rights contained in the constitution of this State from its first organization.

In *Burnap* v. *Marsh et al.* 13 Ill. 535, which was an action on the case for maliciously, and without probable cause, suing out a writ of *ne exeat* against Burnap, and causing his arrest thereon, the court said: "It must be remembered that, under our constitution, no person can be legally imprisoned for debt alone, and it is only in cases where the debtor is fraudulently or wrongfully endeavoring to evade the payment of his debt, that he can be restrained of his liberty. The imprisonment, then, is not for the debt, strictly speaking, but for his wrongful act in endeavoring to evade its payment."

Again, in *Strode* v. *Broadwell*, 36 Ill. 419, the court, quoting the above, say: "Thus it is seen that the imprisonment is for the wrong or the fraud, rather than for the debt."

These citations show that, according to the views of this court, the provision of the constitution under consideration is to be regarded as having effectually abolished imprisonment for debt as practiced under the common law, and that, where a debt is the basis of the action, in order to justify imprisonment, the foundation must be laid under one or both of the exceptions contained in sec. 12, viz: a refusal to deliver up his estate for the benefit of creditors, or fraud either in contracting or evading payment of the debt.

In the first of the two cases above referred to, the doctrine was enunciated in a case where the arrest was made upon a *ne exeat*, and it was in reference to that arrest the court was speaking. If any distinction could be made between such a case, where the basis of the proceeding was of legal

cognizance, and the processes at common law, such a distinction would have been attempted and made by the able judge who delivered the opinion of the court in that case.

But we are unable to perceive how, without resorting to refinements and subtleties not justifiable in the application of constitutional principles, any distinction can be made; for, in the case in hand, the right for which protection was sought was such merely as grew out of the relation of maker and holder of negotiable instruments.

In *Parker* v. *Follensbee*, 45 Ill. 478, the court, after quoting the section of the constitution abolishing imprisonment for debt, said: " It has been repeatedly held by this court that any liability to pay money growing out of contract, express or implied, constitutes a debt, within the meaning of this provision of the constitution; and that before a party can be held to bail on a *capias ad respondendum*, it must appear, by affidavit, that he has been guilty of fraud, or that there is a strong presumption of fraud."

We are, therefore, constrained to hold that, in a case like this, not of an equitable nature, the plaintiff, in analogy to the proceeding by *capias ad respondendum*, must show by his petition, by facts stated and circumstances detailed, that the debtor has been guilty of fraud, or that there is a strong presumption of fraud. *Ex parte Smith*, 16 Ill. 347; *Gorton* v. *Frizzell*, 20 Ill. 291.

By a petition or bill properly framed, the issue of fraud is necessarily tendered, and if made by the respondent's answer, it is necessarily a material issue, which, if established in favor of the respondent, would be ground for quashing the writ.

It follows, from these views, that the court below erred in overruling the motion to quash the writ, and its judgment will be reversed.

*Judgment reversed.*