### Truman W. Brophy v. Thomas M. Sheppard.

#### Gen. No. 12,281.

1. MISSING FILES—*when alleged absence of, at hearing, not ground for reversal.* Where no objection to proceeding was made and it is not made certain by the transcript that the alleged absent files were not before the court, no ground for reversal appears, as, in the absence of a contrary showing, the intendment is that the court had before it in passing on the case the original papers filed or something which it satisfactorily knew to be copies thereof.

2. NE EXEAT—*when writ of, should not issue.* The writ of *ne exeat* should not issue when purely legal process can afford relief as ample and efficacious.

3. NE EXEAT—*when writ of, should not issue.* The writ of *ne exeat* should not issue in the case of a demand not in judgment unless there appears under oath, with the application, facts (not conclusions merely) showing a strong presumption of fraud.

4. NE EXEAT—*what does not furnish ground for issuance of.* The mere fact that the defendant is about to remove from the State with all his property, exempt and unexempt, does not necessarily furnish such a presumption as will justify the issuance of the writ of *ne exeat.*

Petition for writ of *ne exeat.* Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed February 13, 1906.

**Statement by the Court.** August 26, 1903, the appellant, Brophy, filed his bill or petition in the Superior Court

of Cook County, alleging that the appellee, Sheppard, on or prior to May 1, 1902, became indebted to him in the sum of $480; that he (the complainant) had instituted suit against Sheppard in the Superior Court to collect said sum, which suit was pending; that Sheppard was in the employ of the Tengwall File and Ledger Company, and receiving a salary of $30 a week; that said Sheppard was possessed of a large amount of property and had recently sold and disposed of said property and converted the same into cash; that Sheppard had lately written complainant and threatened and given out that he would speedily leave the State and go to California; that complainant therefore charged that Sheppard was about to remove from this State, taking his property with him; that by reason of said Sheppard having sold said property and converted the same into cash, the complainant had no adequate remedy in a court of law; that unless Sheppard was stayed by the writ of *ne exeat republica* from departing out of the jurisdiction of the court, the complainant would have no way of making the amount of the judgment that might be recovered against Sheppard in said pending suit; that said sum of $480 with interest was justly due complainant, who was informed and believed and charged the fact to be that Sheppard intended to defraud him out of the same. The bill prayed that Sheppard might be required to make answer and might be stayed by the writ of *ne exeat republica* from departing out of the jurisdiction of the court, and for any other relief which seemed necessary. The bill was sworn to by appellant, the affidavit stating that "the allegations" were "true in substance and in fact."

On the same day, August 26, 1903, a writ of *ne exeat republica* was by Judge Kavanagh of the Superior Court ordered to issue against said Sheppard, as prayed in this bill, the complainant filing a bond as required by the statute.

The writ issued, commanding the sheriff to summon Sheppard to answer the bill or petition of Brophy, and if he should not give bail according to section 8, chapter 97 of

the Revised Statutes of Illinois, to commit him to the common jail of Cook County to await the further order of the court, or until he should give such bond.

The defendant was arrested on the 27th day of August, 1903. September 1, 1903, an order was entered by Judge Kavanagh permitting him to go on his own recognizance and hold himself to appear upon the order of the court. The same order gave the complainant leave to amend his bill instanter. Thereupon Sheppard entered into a personal bond in the sum of $1,000 to appear on the order of the Superior Court. The complainant amended his bill or petition by inserting an allegation sworn to by him as true in substance and in fact, as follows: "Your orator represents upon information and belief that said Sheppard was possessed of a large amount of personal property, to-wit: One piano and household furniture of great value, to-wit: $900, besides moneys and accounts due him, and that said Sheppard sold the same and that at least $500 worth of said property so held and owned by said Sheppard and sold by him as aforesaid, was not exempt from execution under the laws of the State of Illinois." To the bill thus amended Sheppard filed, on the same day, an answer denying that he was indebted to complainant in any sum whatever, and all the other allegations of the bill except that complainant had instituted suit against him in the Superior Court of Cook County, and that said suit was pending, and praying the same benefit of demurrer to the bill as though he had assigned the following causes of demurrer:

First. That the bill as amended does not set out with sufficient certainty the property alleged to have been sold by the defendant, nor the amount of consideration which defendant is alleged to have received.

Second. That the bill does not allege that the defendant has no other property sufficient for the satisfaction of any judgment which may be recovered against him in said suit.

Third. That the complainant has an adequate remedy at law.

Fourth. That said bill does not state facts sufficient in law to support the writ of *ne exeat republica.*

September 28, 1904, an order was entered by JUDGE BRENTANO in the Superior Court, reciting that the cause came on to be heard on that day upon the motion of the defendant to quash the writ of *ne exeat republica* theretofore issued, and upon the bill and amended bill of complaint, and ordering that the writ of *ne exeat* be quashed, and the bill dismissed at the costs of complainant.

From this order or decree the complainant, Brophy, appealed to this court, the appeal bond reciting the decree as one "for the dismissal of the bill" and for the costs.

In this court it is assigned for error that the trial court erred in quashing the writ of *ne exeat,* and erred in dismissing complainant's bill. It is further assigned for error, and argued, that any final action was erroneous "before said bill and amendment thereto missing from the files were supplied."

The basis for this last contention seems to be that to the final order is an *addendum,* giving "leave to the parties to restore lost files by filing copies of the bill, amendment to bill and answer," and that six months afterward "the petition of Brophy to have the files lost or destroyed supplied and restored" came on to be heard and was allowed, and the bill, amendment and answer were restored.

DANIEL W. SCANLAN, for appellant.

WHEELER, SILBER & ISAACS, for appellee.

MR. JUSTICE BROWN delivered the opinion or the court.

There is no merit in the point made by appellant that there were missing files at the time of the hearing, and that it was therefore erroneous to render a decree. In the first place it is at least doubtful whether any error is properly assigned as to this. We have certainly never expressed any approval of the theory of appellant's counsel that "errors are not supposed to be assigned upon a short record," nor construed rule 12 to mean that when errors have been assigned on a

short record, additional errors could, without special leave, be assigned on a supplemental record.

But assuming the alleged error is properly assigned, the point is not well taken. The clause of the final order alluded to in the statement is no proof that at the hearing the papers alluded to were missing. And if they were, no objection to proceeding is shown by the record to have been made, and the inference, if any, from the order, is that there was none. The intendment undoubtedly is that the court had before it, in passing on the case, the original papers filed, or something which it satisfactorily knew to be copies thereof. This does not appear to have been the case in Groch v. Stenger, 65 Ill. 481, cited by appellant. The decree in that case, moreover, was reversed, "for the reason that the evidence was unsatisfactory."

Nor do we regard the contention of the appellee that the appeal was from the dismissal of the bill and not from the quashing of the writ, of any importance. The appeal was prayed and allowed, and we think taken, from the final order or decree. We shall consider the merits of the appeal on that theory.

The merits depend on the sufficiency of the allegations of the bill as amended to warrant the issuance of the writ. We think that they were clearly insufficient. There was no occasion in this cause for the use of the extraordinary writ of *ne exeat republica*. This writ, which was originally a high prerogative writ used by the King to prevent, for reasons of state, some person from availing himself of the privilege granted freemen by Magna Charta of going beyond seas without interference, and was afterward used to aid equitable claims by a process similar to that of *capias ad respondendum* in legal claims, was, by our statute, originally enacted in 1827, made to apply to legal as well as equitable demands, and to both in cases where the debt or demand was not due but existed fairly and in expectancy at the time of making application for the writ.

But two matters must be taken into account in all proceedings under the statute.

One is the constitutional provision (article 2, section 12, of the Constitution of Illinois), "No person shall be imprisoned for debt unless upon refusal to deliver up his estate for the benefit of his creditors in such manner as shall be prescribed by law, or in cases where there is a strong presumption of fraud;" and the second is the ruling of the Supreme Court construing the statute and holding that the writ should not be allowed when purely legal process can afford relief as ample and efficacious. Victor Scale Company v. Shurtleff, 81 Ill., 313.

The policy of our law is opposed to imprisonment for debt and in favor of the liberty of the citizen, and a writ of *ne exeat* should not issue in the case of a demand not in judgment, unless there clearly appears under oath, with the application, facts—not conclusions merely—showing a strong presumption of fraud. Burnap v. Marsh, 13 Ill., 535; Malcolm v. Andrews, 68 Ill., 100.

That the bill originally filed for this writ did not contain any such allegations of fact, is too clear to need discussion. No *capias ad respondendum* could ever have been granted on an affidavit containing nothing more. A man may certainly sell and dispose of property and tell another that he is going to leave the State, without raising a strong presumption of fraud, or even indicating that he will not pay a disputed claim if it is adjudicated against him. As Judge McAllister said in Malcolm v. Andrews, 68 Ill., 100, even a declaration from a person against whom a claim is made on promissory notes signed by him, that he will not pay it, may, under some circumstances spring rather from a sense of justice than from a design to defraud creditors. Nor do we think that this case of Malcolm v. Andrews, or Jones v. Kennicott, 83 Ill., 484, is authority for the *dictum* in the opinion in Garden City Sand Co. v. Gettins, 102 Ill. App., 251, that if an alleged debtor was intending to carry unexempt property out of the State, this would furnish in itself a sufficient presumption of fraud to warrant his detention. What these cases decided was that where property about to be carried away was not affirmatively shown

to be unexempt, there could be no presumption of fraud derived from the removal—a very different proposition. We can well imagine cases in which the removal from the State with all his property, exempt and unexempt, by an alleged debtor, would be entirely innocent and furnish no presumption of fraud, and in the case of a proceeding for a writ of *ne exeat,* as the court truly remarks in the case of Garden City Sand Co. v. Gettins, *supra,* the entire burden of proof is upon the applicant. Every intendment is in favor of the liberty of the citizen. We think the bill or petition for the writ in the case at bar was as defective after amendment as it was before, and showed no sufficient cause for the issuance of the writ.

But even if the allegations in the bill as amended were sufficient to raise the strong presumption of fraud necessary under the constitution to justify the arrest or detention of the appellee, they would not justify the writ of *ne exeat,* for they would be sufficient in that case to secure a *capias ad respondendum* on proper application, and the Supreme Court has expressly held that in such a case the writ of *ne exeat* should not issue. Victor Scale Co. v. Shurtleff, 81 Ill., 313. "The proceeding is special, *sui generis,"* said MR. JUSTICE BREESE in that case, "and is never allowed when the necessity for the writ does not exist. * * * We do not think a court of equity should interfere when a court of law or legal process issued by such a court can afford the party relief as ample and speedy." The only answer made by appellant to this objection is, that because suit by the appellant against the appellee was pending and undisposed of when the writ was granted, a great hardship" might be inflicted on appellant in compelling him to dismiss his lawsuit and begin over again. The "hardship" of such a course under ordinary circumstances would not seem too great in view of the unusual and harsh expedient demanded by the plaintiff in the arrest and detention of the defendant. If there were extraordinary circumstances causing such a hardship, they do not appear in this record, and the bur-

den of proof in this proceeding, as we have noted, is altogether on the applicant for the writ.

The action of the Superior Court in quashing the writ and in dismissing the bill was correct and is affirmed.

*Affirmed.*