HELEN M. HOPPE v. HILDA M. KLAPPERICH AND OTHERS.[1]

June 27, 1947.

Nos. 34,312, 34,362.

[1]Reported in 28 N. W. (2d) 780.

226

*Lauerman & Pfeiffer,* for appellant.

*Lawrence M. Hall* and *E. J. Ruegemer,* for respondent Hilda M. Klapperich.

*Allen A. Atwood* and *W. F. Freeman,* for respondent Allen A. Atwood.

*Phillips & Sherwood,* for respondent W. Y. Henning as judge of the municipal court.

*Quigley, Donohue & Quigley,* for respondent Art McIntee as sheriff.

MATSON, JUSTICE.

Plaintiff brought an action against Hilda M. Klapperich, her attorney, Allen Atwood, Art McIntee, sheriff of Stearns county, and W. Y. Henning, municipal judge of the city of St. Cloud, for (1) malicious prosecution, and (2) abuse of process. Each defendant interposed a separate demurrer upon the ground that the complaint did not state a cause of action. This is an appeal from the orders sustaining the demurrers.

Upon demurrer, we are concerned not with a determination of the truth of plaintiff's allegations, but with the sole problem of whether such allegations are (1) legally sufficient in form so as to constitute good pleading, or (2) whether such allegations, even if found to be true upon trial, would entitle plaintiff to judgment as a matter of substantive law. A demurrer admits all material facts well pleaded, but such admission is solely for the purpose of testing their legal sufficiency. If a party cannot, under his pleadings, prove facts which, if established, will entitle him to judgment, there is no pur-

pose in wasting the time of the court and the opposing party in going to trial.[2]

Pursuant to plaintiff's complaint, the facts as alleged under the first cause of action are these: Plaintiff, Helen M. Hoppe, was the owner of a gold wrist watch before and on July 11, 1945. On that day, defendant Klapperich as principal and defendant Atwood as her attorney and agent, "acting in concert with the defendants Henning and McIntee, knowingly, wrongfully, maliciously and without probable cause, procured the issuance of a warrant for the plaintiff's arrest by the defendant Henning acting as the magistrate of said Municipal Court." The warrant charged plaintiff with the theft of the gold watch from John Klapperich, deceased, which charge "all of the defendants on said date and prior thereto knew, or ought to have known, was entirely false."

The warrant is alleged to have been issued by Henning without first requiring the complaint to be reduced to writing and to be subscribed as required by M. S. A. § 629.42, which fact was or should have been known to all the defendants. Plaintiff was arrested under this warrant and held in the St. Cloud jail. While there held, she was compelled to deliver the watch to sheriff McIntee.

Plaintiff was then caused to appear in the municipal court which had issued the warrant to answer the charges against her. Upon investigation by the county attorney, "it became known that the defendants had wrongfully and unlawfully by reason of such warrant caused the plaintiff to be arrested and imprisoned," with the result that on August 2, 1945, upon motion of the county attorney, the proceedings were dismissed and plaintiff discharged. Following the dismissal the watch was returned.

Plaintiff's second cause of action, for abuse of process, rests on the following allegations: Plaintiff was the owner of a manila envelope containing certain bonds, negotiable instruments, and other valuable papers. She alleges that it was the intent of defendants to force her to part with the envelope and its contents by threatening her with

---

[2] 2 Pirsig's Dunnell, Minn. Pleading, § 1619; 5 Dunnell, Dig. & Supp. § 7542.

arrest and prosecution on a criminal charge of having stolen the aforementioned watch. In pursuance of that plan, defendants procured the issuance of the warrant by Judge Henning. Sheriff McIntee then, acting for himself and as agent for the other defendants, went to the residence of plaintiff accompanied by Atwood. There, in the presence of Atwood, he informed plaintiff that he had a warrant for her arrest for the theft of the watch, but if she turned over to him the envelope with its contents he would not arrest her. On the other hand, if she refused to give up the envelope, he would arrest her and confine her in the county jail in execution of the said warrant. Plaintiff refused, and she was then arrested, confined in jail, and caused to appear in the municipal court. Upon inquiry by the county attorney, "it became known that the defendants had wrongfully and unlawfully by reason of such warrant and arrest attempted to intimidate the plaintiff and extort her property from her, and had thereby abused the criminal process of the State of Minnesota, and had wrongfully and unlawfully caused the plaintiff to be imprisoned," with the result that the proceedings, upon motion of the county attorney, were dismissed and plaintiff discharged. The arrest and confinement are alleged to constitute a continuing abuse of process for the purpose of forcing her to give up her personal property.

■ The demurrer of defendant Klapperich was sustained on the ground that the allegation that the warrant was procured "knowingly, wrongfully, maliciously and without probable cause" was not a pleading of the ultimate facts needed to sustain an action for malicious prosecution, but was a mere conclusion of law. Mr. Justice Mitchell in Clark v. C. M. & St. P. Ry. Co. 28 Minn. 69, 71, 9 N. W. 75, said:

"* * * Some latitude must therefore be given to the term 'facts,' when used in a rule of pleading. It must of necessity include many allegations which are mixed conclusions of law and statements of fact; otherwise pleadings would become intolerably prolix, and mere statements of the evidence. Hence, it has become a rule of pleading that, while it is not allowable to allege a mere conclusion of law

containing no element of fact, yet it is proper, not only to plead the ultimate fact inferable from certain other facts, but also to plead anything which, according to the common and ordinary use of language, amounts to a mixed statement of fact and of a legal conclusion. It may not be possible to formulate a definition that will always describe what is a mere conclusion of law, so as to distinguish it from a pleadable, ultimate fact, or that will define how great an infusion of conclusions of law will be allowed to enter into the composition of a pleadable fact. Precedent and analogy are our only guides."

As a sound precedent, we have the holding of this court in O'Neill v. Johnson, 53 Minn. 439, 442, 55 N. W. 601, 39 A. S. R. 615, to the effect that:

"In an action for malicious prosecution malice is a fact to be pleaded as such, and it would be bad pleading to set forth the evidence to establish it. Want of probable cause, though made up of a question of fact and a question of law, is, like many other composite facts,—such, for instance, as title to property,—a fact for the purpose of pleading, and may be stated directly." See, Olson v. Tvete, 46 Minn. 225, 48 N. W. 914.

Here, the allegation is a sufficient pleading of the ultimate fact of the institution of criminal proceedings against plaintiff maliciously and without probable cause. The allegation that defendants procured the issuance of the warrant is a sufficient charge that they set in motion the machinery of the law against plaintiff. The allegation that the proceedings were instituted maliciously is not merely a pleading of a conclusion of law, but also of ultimate fact. A pleading of ultimate fact is not necessarily vitiated because the words used encompass in their accepted meaning an element constituting a conclusion of law. In addition to the institution of these proceedings maliciously and without probable cause, we have a clear allegation that such proceedings were terminated in favor of plaintiff. It follows, therefore, that as to the first cause of action, the demurrer of defendant Klapperich should have been overruled. See, Burnap v. Marsh, 13 Ill. 535; 4 Dunnell, Dig. § 5741.

██ Are the allegations of the second cause of action legally sufficient? Defendant Klapperich contends that there is no basis for an action for the abuse of process unless the process was lawfully and properly issued. In this contention said defendant is in error. The essential elements of an action for abuse of process are only two, namely, (a) the existence of an ulterior purpose, and (b) the act of using the process to accomplish a result not within the scope of the proceeding in which it was issued, whether such result might otherwise be lawfully obtained or not. The gist of the action is the misuse or misapplication of the process, *after it has once been issued,* for an end other than that which it was designed to accomplish. Prosser, Torts, § 98; 1 Cooley, Torts (4 ed.) § 131, p. 437; Annotation, 80 A. L. R. 580; Restatement, Torts, § 682; cf. Restatement, Torts, § 136(b), *comment c.* It is not essential in order to maintain such an action that the process shall have been validly or regularly issued.

"* * * the courts commonly refer to the abuse of process as being the perversion of regularly issued process * * *, but it seems that such language is used for the mere purpose of calling attention to the fact that the action commonly lies notwithstanding the process may have been regularly issued. * * *

"The facts of a case may at once justify an action either for malicious prosecution or for the abuse of process. In other words, an abuse of process may occur in the course of a prosecution which has been malicious and wrongful throughout." Annotation, 80 A. L. R. 581, and cases cited.

"* * * While an action for abuse of process ordinarily presupposes an originally valid and regular process, duly and properly issued, there may be actionable abuses of a process not thus originally regular and properly issued; any action for such abuses would necessarily ignore the infirmities in the process itself and rely on the abuses of it after it had been sued out, since such latter abuses constitute the gist of the action." 1 Am. Jur., Abuse of Process, § 7.

The regularity or irregularity in the issuance of the process which has been abused is immaterial. Antcliff. v. June, 81 Mich. 477, 45 N. W. 1019, 10 L. R. A. 621, 21 A. S. R. 533. See, Rossiter v. Minne-

sota Bradner-Smith Paper Co. 37 Minn. 296, 33 N. W. 855; Glide-well v. Murray-Lacy and Co. 124 Va. 563, 98 S. E. 665, 4 A. L. R. 225; Price v. Clement, 187 Okl. 304, 102 P. (2d) 595 (dissenting opinion) ; Restatement, Torts, § 682.

Defendant Klapperich further contends that plaintiff's plead-ings as to abuse of process are defective in that there is no allega-tion that she was actually deprived of her property as a result of the improper use of the warrant issued for her arrest. In other words, the attempt to extort from plaintiff certain bonds contained in an envelope failed, and therefore no injury resulted to her property. In Nelson v. National Cas. Co. 179 Minn. 53, 59, 228 N. W. 437, 439, 67 A. L. R. 509, quoting from 1 R. C. L. p. 103, we held:

"The test is probably whether the process has been used to ac-complish some unlawful end, or to compel the defendant to do some collateral thing which he could not legally be compelled to do. As to the result of an abuse of process that will support an action, it seems that *there must be either an injury to the person or to property.* Mere indirect injury to a person's business or to his good name is not sufficient." (Italics supplied.)

Here, we have no injury to plaintiff's property. Was there, however, an injury to her person, in that she was placed under arrest when she refused to surrender the envelope? Defendant Klapperich as-sumes that the arrest which followed was necessarily made pursuant to a proper use of the process for the purpose of apprehending plain-tiff on a charge of stealing a watch. It is a question of fact whether the actual arrest and jailing of plaintiff, which followed her refusal to surrender the envelope, was made as a continuation of the abuse of process for the purpose of thereby compelling her to surrender the envelope and its contents, or whether such arrest and imprison-ment was made to accomplish the lawful purpose for which the war-rant was designed. Restatement, Torts, § 127, illustration 2; *Id.* § 136 (b), *comment c.* This question of fact must, for the purpose of testing the demurrer, be resolved against said defendant, in that plaintiff has specifically alleged that by her arrest and confinement in the county jail the defendants intentionally and maliciously at-

tempted to intimidate and compel her to surrender the property. Obviously, plaintiff's allegations are sufficient to maintain an action for abuse of process. The demurrer of defendant Klapperich should have been overruled.[3]

In giving consideration to both causes of action, we have not been unmindful of the rule that if a general demurrer is interposed to a whole pleading and such pleading contains at least one good cause of action, such demurrer must be overruled, in that it must be good to the whole extent to which it is interposed. Brill v. Minnesota Mines, Inc. 200 Minn. 454, 274 N. W. 631, 112 A. L. R. 173; 1 Pirsig's Dunnell, Minn. Pleading, § 99; 5 Dunnell, Dig. & Supp. § 7543. In the interest, however, of a clarification of the issues as to all the defendants, we have considered the legal sufficiency of both causes of action.

With respect to the action for malicious prosecution, the complaint alleges that all the defendants acted in concert, and with regard to the action for abuse of process it alleges that upon the issuance of the warrant, with wrongful and malicious intent then had and entertained by all the defendants to abuse such criminal process, defendant McIntee as sheriff acted for himself and also as agent for the other defendants. As already indicated, the demurrer of defendant Klapperich should have been overruled as to both causes of action. It follows that the demurrers interposed by the other defendants should likewise have been overruled unless their claims of official immunity are well founded. We proceed to determine what immunity is enjoyed by defendant Henning, who is a judge of the municipal court of St. Cloud, a court of record, and possessed of the same jurisdiction in criminal matters as a justice of the peace. The principle of judicial immunity is recognized generally by all American courts, both state and federal, and by the courts of England. See, Linder v. Foster, 209 Minn. 43, 46, 295 N. W. 299, 300, and the

[3] As to measure and nature of damages for abuse of process, see: Restatement, Torts, § 682; Annotations, 4 A. L. R. 237, 162 A. L. R. 804, and 86 A. S. R. 410; McCormick, Damages, § 109, p. 385; 1 Am. Jur., Abuse of Process, §§ 37 to 41; Prosser, Torts, § 98; General Motors Acceptance Corp. v. Davis, 151 Okl. 255, 7 P. (2d) 157.

authorities therein cited. The immunity doctrine has always been recognized by this court.

"* * * Hence, the doctrine has become settled that, for acts done in the exercise of judicial authority, clearly conferred, an officer or judge shall not be held liable to any one in a civil action, so that he may feel free to act upon his own convictions, uninfluenced by any fear or apprehension of consequences personal to himself." Stewart v. Cooley, 23 Minn. 347, 350, 23 Am. R. 690.

"It is unquestionable, and has been from the earliest days of the common law, that a judicial officer cannot be called to account in a civil action for his determinations and acts in his judicial capacity; however erroneous or by whatever motives prompted." Stewart v. Case, 53 Minn. 62, 66, 54 N. W. 938, 39 A. S. R. 575.

In Linder v. Foster, 209 Minn. 46, 295 N. W. 301, *supra,* in giving the reasons for the rule, we quoted with approval from Yaselli v. Goff (2 Cir.) 12 F. (2d) 396, 399, 56 A. L. R. 1239, as follows:

"There are weighty reasons why judicial officers should be shielded in the proper discharge of their official duties from harassing litigation at the suit of those who think themselves wronged by their decisions and that injustice has been done. A defeated party to a litigation may not only think himself wronged, but may attribute wrong motives to the judge whom he holds responsible for his defeat. He may think that the judge has allowed passion or prejudice to control his decision. To allow a judge to be sued in a civil action on a complaint charging the judge's acts were the result of partiality, or malice, or corruption, would deprive the judges of the protection which is regarded as essential to judicial independence. It is not in the public interests that such a suit should be maintained; and it is a fundamental principle of English and American jurisdiction that such an action cannot be maintained."

See, 2 Cooley, Torts (4 ed.) § 312; 21 Minn. L. Rev. 270.

■ The rule of immunity, which extends to all classes of courts and applies to the highest judge of the nation and to the lowest officer who sits as a court and tries petty cases, is not to be scuttled

or avoided by pleading that the acts complained of resulted from a conspiracy previously entered into.[4]

■ This salutary rule conferring upon a judicial officer well-nigh absolute immunity from liability for acts done while acting in his judicial capacity has no application if he acts wholly without jurisdiction.[5] Absent all jurisdiction, there is no immunity for a judicial officer, regardless of his station. See, Roerig v. Houghton, 144 Minn. 231, 175 N. W. 542; 30 Am. Jur., Judges, §§ 44, 45; 3 Dunnell, Dig. & Supp. § 4959; Annotations, 13 A. L. R. 1345, 55 A. L. R. 283, and 137 A. S. R. 53.

"* * * A judge is not such at all times and for all purposes; when he acts he must be clothed with jurisdiction; and acting without this, he is but the individual falsely assuming an authority he does not possess." 2 Cooley, Torts (4 ed.) § 315.

■ As already noted, defendant Henning was possessed of the same jurisdiction in criminal matters as a justice of the peace. A justice court is of special and limited jurisdiction and is confined strictly to the power conferred on it by statute, and this power must be exercised in the manner prescribed. Holgate v. Broome, 8 Minn. 209 (243); May v. Grawert, 86 Minn. 210, 90 N. W. 383; State ex rel. Faughnan v. Miesen, 96 Minn. 466, 105 N. W. 555; State ex rel. Meister v. Stanway, 174 Minn. 608, 219 N. W. 452; In re Harrand, 254 Mich. 584, 236 N. W. 869; 4 Dunnell, Dig. & Supp. § 5270; Id. Dig. § 5290. The jurisdictional power to issue warrants for the arrest of alleged criminal offenders is governed by M. S. A. § 629.42, which provides:

---

[4]For an excellent statement of the immunity rule and a comprehensive citation of authorities, see Mr. Chief Justice Gallagher's well-considered opinion in Linder v. Foster, 209 Minn. 43, 295 N. W. 299. See, also, 21 Minn. L. Rev. 270; 2 Cooley, Torts (4 ed.) § 312.

[5]Caveat. Acts performed wholly without jurisdiction are not to be confused with acts performed in excess of jurisdiction. See, Bradley v. Fisher, 80 U. S. (Wall.) 335, 352, 20 L. ed. 646, 651; Annotations, 13 A. L. R. 1355, 55 A. L. R. 283, and 137 A. S. R. 53; 30 Am. Jur., Judges, §§ 45 to 47; Mechem, Public Officers, § 629.

"Upon complaint made to any such magistrate that a criminal offense has been committed, he shall examine, on oath, the complainant and any witnesses who shall appear before him, *reduce the complaint to writing, and cause it to be subscribed by the complainant;* and, if it shall appear that such offense has been committed, he shall issue a warrant * * *." (Italics supplied.)[6]

It stands admitted by the demurrer that defendant Henning issued the warrant before any complaint had been made in writing. The only reasonable factual inference to be drawn from this allegation is that no complaint had been reduced to writing and subscribed by the complainant when the warrant was issued. The statute invests the magistrate with power, the jurisdiction to issue a warrant, only on the happening of a certain event, namely, the making of a complaint which has been reduced to writing and subscribed, and not otherwise. State v. Graffmuller, 26 Minn. 6, 46 N. W. 445; State ex rel. Sheehy v. Bates, 96 Minn. 150, 104 N. W. 890; 4 Dunnell, Dig. & Supp. § 5343. Obviously, jurisdictional facts must actually exist before jurisdiction is acquired. In issuing a warrant without first having a complaint reduced to writing and subscribed by complainant as required by statute, defendant Henning, as a municipal judge vested with powers of a justice of the peace in criminal matters, *acted wholly outside his jurisdiction* and in a nonjudicial capacity, and for such act he can claim no immunity from liability in a civil suit for damages. He was not functioning as a judge, but as a private individual liable in damages for his tortious act. He could not acquire the jurisdiction essential to judicial immunity without first having a written complaint duly subscribed. In the absence of a written complaint, there was not even a colorable invocation of jurisdiction. Henning acted not in a mistaken reliance upon a written complaint that was defective in failing to state facts necessary to constitute a criminal offense (Broom v. Douglass, 175 Ala. 268, 57 So. 860, 44 L.R.A.[N.S.] 164, Ann. Cas. 1914C, 1155), or upon a complaint that was merely irregular in not being properly veri-

[6]Also, see, M. S. A. § 633.03, of the same import and which is limited to justices of the peace.

fied (State v. Rudin, 153 Minn. 159, 189 N. W. 710), but without *any* written complaint at all. There was a total absence of jurisdiction.

"In order to give immunity to a justice of the peace or magistrate issuing a warrant, it must appear that the warrant was issued on a sufficient affidavit or complaint, where it is not issued on view." 31 Am. Jur., Justices of the Peace, § 25.

Therefore, Henning acted in a private capacity, and he can claim no judicial immunity with respect to either cause of action.[7]

 If the demurrer of defendant McIntee, the sheriff, had been directed solely to the first cause of action for malicious prosecution, it would have been good. The warrant, pursuant to which he arrested plaintiff, was issued by a court having jurisdiction of the subject matter and was fair and regular on its face, and there was nothing about it to apprise him of the fact that the court, by failing to comply with the preliminary statutory requirement of having a complaint in writing signed by the complainant, had failed in this particular instance to bring its jurisdictional power into operative effect. In fact, the warrant recited the making of a written complaint. It was the sheriff's imperative duty to execute the warrant (M. S. A. § 387.03), and he was not obliged to go behind the warrant to determine the validity of the prior proceedings. Ingraham v. Booton, 117 Minn. 105, 134 N. W. 505, Ann. Cas. 1913D, 212. A sheriff cannot refuse to serve a process, fair on its face, because of his own belief that the magistrate from which the process issued had no jurisdiction. Dean v. Board of Co. Commrs. 50 Minn. 232, 52 N. W. 650; Reilly v. U. S. Fidelity & Guaranty Co. (9 Cir.) 15 F.

[7]Bradley v. Fisher, 80 U. S. (Wall.) 335, 20 L. ed. 646; Shaw v. Moon, 117 Or. 558, 245 P. 318, 45 A. L. R. 600; Williams v. Kozak (4 Cir.) 280 F. 373; Broom v. Douglass, 175 Ala. 268, 57 So. 860, 44 L.R.A.(N.S.) 164, Ann. Cas. 1914C, 1155; Shaefer v. Smith, 92 N. J. L. 267; Hazen v. Creller, 83 Vt. 460, 76 A. 145; Flack v. Harrington, 1 Ill. 213, 12 Am. D. 170; Tracy v. Williams, 4 Conn. 107, 113, 10 Am. D. 102; Poulk v. Slocum, 3 Blackf. (Ind.) (2 ed.) 421. See, Annotations, 13 A. L. R. 1351, 45 A. L. R. 605, 137 A. S. R. 47, and 14 L. R. A. 138; 2 Cooley, Torts (4 ed.) § 315; Throop, Public Officers, § 734; Mechem, Public Officers, § 630; 31 Am. Jur., Justices of the Peace, §§ 22, 25.

(2d) 314. A sheriff is protected from liability for acts done in executing the process and orders of a court having jurisdiction of the subject matter when the process is fair on its face (Robinette v. Price, 214 Minn. 521, 8 N. W. [2d] 800), and he cannot be made liable for its execution in a legal manner even if he personally knows of jurisdictional defects in the preliminary proceedings pursuant to which the process was issued.[8] Obviously, the statutory duty to execute a process which is fair on its face and emanates from a court having jurisdiction of the subject matter is not to be set at naught by any supposed intrinsic knowledge or belief of the sheriff that he knows such process to be invalid for any jurisdictional or other defect, and the protection afforded him in the fearless and faithful discharge of this duty is not to be scuttled or avoided by pleading that the act of performing such duty resulted from a conspiracy previously entered into.[9] However, this rule as to "process fair upon its face" affords the sheriff no protection where he is a party or is the complainant in causing the process to be wrongfully issued solely for his own benefit, as in Johnson v. Randall, 74 Minn. 44, 76 N. W. 791. See, 1 Cooley, Torts (4 ed.) § 133.

■ The demurrer of defendant McIntee should have been overruled, in that it is not good as to the second cause of action—that for abuse of process. In considering the demurrer of Klapperich, we have already pointed out that the regularity or irregularity in the issuance of the process is immaterial and that the gist of the action

[8]Dean v. Board of Co. Commrs. 50 Minn. 232, 52 N. W. 650; Marks v. Sullivan, 9 Utah 12, 33 P. 224, 20 L. R. A. 590; Watson v. Watson, 9 Conn. 140, 23 Am. D. 324; Rice v. Miller, 70 Tex. 613, 8 S. W. 317, 8 A. S. R. 630; People v. Warren, 5 Hill (N. Y.) 440; O'Shaughnessy v. Baxter, 121 Mass. 515; Heath v. Halfhill, 106 Iowa 131, 76 N. W. 522; Restatement, Torts, §§ 122 and 124, comment b; 5 Dunnell, Dig. § 8741; Id. Dig. & Supp. § 8743; Prosser, Torts, § 25, p. 155; Mechem, Public Officers, § 745; Throop, Public Officers, § 758; 2 Cooley, Torts (4 ed.) § 339; 4 Am. Jur., Arrest, § 122; 43 Am. Jur., Public Officers, §§ 282, 288; Annotation, 51 L. R. A. 193; and note in 20 L. ed. 745, in connection with Erskine v. Hohnbach, 81 U. S. (Wall.) 613.

[9]See, Linder v. Foster, 209 Minn. 43, 295 N. W. 299, for analogous result with respect to immunity of a judicial officer.

is the misuse or misapplication of a process after it has once been issued. We have also indicated that it was a question of fact whether the actual arrest and jailing of plaintiff, which followed her refusal to surrender the envelope with the bonds, was made as a continuation of the abuse of process or made in fulfillment of the purpose for which the warrant was issued. Under the pleadings herein, this question, as before, must also be resolved against defendant McIntee. Obviously, the use of a process for the accomplishment of a purpose for which it was not designed in order to compel a person to do some collateral thing which he could not in this manner be compelled to do is an abuse of process. Here, a warrant of arrest was used in an attempt to extort certain property. In using a warrant of arrest for a purpose for which it was not designed, a ministerial officer such as a sheriff is acting entirely outside the scope of his official duties, and in so doing he forfeits the protection which would otherwise be his if he executed such process for the purpose for which it was intended. For such abuse of process, he, like any other private individual, is liable in damages.

"The arrest of another is not privileged unless the actor makes the arrest for the purpose of bringing the other before a court, body or official or otherwise securing the administration of the law." Restatement, Torts, § 127.

"* * * The privilege to arrest another or to keep him in custody is given to the actor for the sole purpose of securing the proper administration of the law, usually by bringing the other before a proper court, body or official having authority to try him for the offense of which he is accused or suspected, * * *. He is, however, not privileged to use the power which his custody of another gives him over the other to force the other to comply with any demand which has no relation to accomplishing the purpose for which the custody is privileged. * * * Where the actor misuses the custody which he has obtained of another by a privileged arrest under a warrant, his misuse is an abuse of process." Restatement, Torts, § 136, *Comment on Clause* (b), p. 316.

McClenny v. Inverarity, 80 Kan. 569, 103 P. 82, 24 L.R.A. (N.S.) 301; Wood v. Graves, 144 Mass. 365, 11 N. E. 567, 59 Am. R. 95; Shaw v. Spooner, 9 N. H. 197, 32 Am. D. 348; Glidewell v. Murray-Lacy and Co. 124 Va. 563, 98 S. E. 665, 4 A. L. R. 225; Annotations, 4 A. L. R. 233, 24 L.R.A. (N.S.) 301, and 86 A. S. R. 406, 407; 5 Dunnell, Dig. & Supp. § 7837; Prosser, Torts, § 98.

What privilege or immunity from liability in damages to a third person does defendant Atwood enjoy as attorney for Klapperich? What is the nature of the office of attorney? An attorney in the discharge of his professional duties is, in a restricted sense, an agent of his client, but this agency is distinguishable from other agencies, in that the lawyer as a professional representative of his client is vested with certain powers and duties entirely different from and superior to those of an ordinary agent, and these powers and duties are derived not from the agency relationship with his client, but from his quasi-judicial status as an officer of the court, who is charged with a definite responsibility in the administration of justice in the interest of the public welfare. Out of his status as an officer of the court arise duties that are public as distinguished from the purely private duties owed to his client.[10]

"An attorney at law is an officer of the court. The nature of his obligations is both public and private. His public duty consists in his obligation to aid the administration of justice; his private duty, to faithfully, honestly, and conscientiously represent the interests of his client. In every case that comes to him in his professional capacity he must determine wherein lies his obligations to the public and his obligations to his client, and to discharge this duty properly requires the exercise of a keen discrimination; and *wherever the duties to his client conflict with those he owes to the public as an*

---

[10]See, Curtis v. Richards, 4 Idaho 434, 40 P. 57, 95 A. S. R. 134; Bergeron, Petitioner, 220 Mass. 472, 107 N. E. 1007, Ann. Cas. 1917A, 549; Langen v. Borkowski, 188 Wis. 277, 206 N. W. 181, 43 A. L. R. 622; Annotation, 17 L. R. A. 244; 5 Am. Jur., Attorneys at Law, § 6; 7 C. J. S., Attorney and Client, § 4; 1 Dunnell, Dig. & Supp. § 664; Weeks, Attorneys at Law (2 ed. Boone) § 39, pp. 81, 82, and note.

*officer of the court in the administration of justice, the former must yield to the latter.* He therefore occupies what may be termed a *quasi*-judicial office." Langen v. Borkowski, 188 Wis. 277, 301, 206 N. W. 181, 190, 43 A. L. R. 622. (Italics supplied.)

In the performance of his duties to his client, an attorney enjoys immunity from liability to a third person insofar as he does not materially depart from his character as a quasi-judicial officer charged with responsibility for the administration of justice. Clearly, he may forfeit his immunity if he permits the private interests and desires of his client to become so dominant that he ceases to be a minister of justice and instead knowingly becomes an instrumentality for the perpetration of fraud or for the malicious prosecution and imprisonment of a party against whom he knows his client has no just claim or cause of arrest.

Loyalty and devotion to a client, however, is a badge of merit and not of itself evidence of malice or culpable conduct.

"* * * It is in the interests of the proper administration of justice that counsel shall be courageous and fearless in the discharge of their duties; and, in fact, fearlessness and courage are among the principal elements that lead to professional success. As we cannot have a strong court without courageous and fearless judges, so it is impossible to have a strong bar without courageous and fearless attorneys. Both operate together in a common cause, as parts and parcels of the judicial system, to bring about the best results." Langen v. Borkowski, 188 Wis. 277, 303, 206 N. W. 181, 191, 43 A. L. R. 622.

We must proceed with caution lest we deprive the zealous advocate of his independence in fearlessly presenting a debatable legal cause.

However, malice possessed by an attorney, or by him knowingly furthered in behalf of a client, if coupled with a want of probable cause, thwarts the administration of justice and is not sheltered by any privilege or official immunity. Assuming the joint existence of the essential elements of (a) *malice* and (b) *want of probable cause,* an action for damages for malicious prosecution

lies against an attorney if in instituting the proceedings he knew of his client's malicious motives or if he himself was actuated by malice; and then only if, in addition, he did not have, upon the disclosure of alleged facts made by the client and by him accepted in good faith as true, a reasonable basis for believing there was a probable cause for the prosecution, or if he otherwise had knowledge showing an absence of probable cause.[11]

"* * * But when an attorney submits to be made the instrument of prosecuting and imprisoning a party against whom he knows his client has no just claim, or cause of arrest, and that the plaintiff is actuated by illegal or malicious motives, he is morally and legally just as much liable as if he were prompted by his own malice against the injured party. If he will knowingly sell himself to work out the malicious purposes of another, he is a partaker of that malice as much as if it originated in his own bosom. The attorney, then, cannot always justify himself under the instructions of his client, no matter how positive they may be." Burnap v. Marsh, 13 Ill. 535, 538.

"* * * If the attorney proceeds upon facts stated to him by his client, believing those facts to be true, and if those facts, if true, would constitute probable cause for instituting such a prosecution, then the attorney is exonerated. [Cases cited.] But if the attorney agree with his client to institute a prosecution which is groundless, and which is understood both by the attorney and by the client to be such, then the attorney is liable." Staley v. Turner, 21 Mo. App. 244, 250.[12]

---

[11]Staley v. Turner, 21 Mo. App. 244; Peck v. Chouteau, 91 Mo. 138, 3 S. W. 577, 60 Am. R. 236; McMorris v. Howell, 89 App. Div. (Hun.) 272, 85 N. Y. S. 1018; Anderson v. Canaday, 37 Okl. 171, 131 P. 697, L. R. A. 1915A, 1186, Ann. Cas. 1915B, 714; Roth v. Shupp, 94 Md. 55, 50 A. 430; Burnap v. Marsh, 13 Ill. 535; Langen v. Borkowski, 188 Wis. 277, 206 N. W. 181, 43 A. L. R. 622; Annotations, 43 A. L. R. 639 (excellent), 67 A. S. R. 425, 51 L.R.A.(N.S.) 474, Ann. Cas. 1915B, 718, and 26 A. S. R. 134; 5 Am. Jur., Attorneys at Law, § 147; 34 Am. Jur., Malicious Prosecution, § 85; 7 C. J. S., Attorney and Client, § 52, p. 834; Newell, Malicious Prosecution, § 18; Weeks, Attorneys at Law (2 ed. Boone) § 133.

[12]As to what constitutes probable cause, see, McMorris v. Howell, 89

■ .An attorney is likewise personally liable to a third party if he maliciously participates with others in an abuse of process or if he maliciously encourages and induces another to act as his instrumentality in committing an act constituting an abuse of process. The rule is stated in 1 Am. Jur., Abuse of Process, § 31, as follows:

"An attorney may be held liable for an abuse of process, where the acts complained of are his own personal acts, or the acts of others wholly instigated and carried on by him."[13]

Without further discussion, it is clear that the demurrer of defendant Atwood should have been overruled.

The orders of the trial court sustaining the respective demurrers of the defendants are reversed.

Reversed.

---

App. Div. (Hun.) 272, 275, 85 N. Y. S. 1018, 1020, *supra.* As to right of attorney to rely upon disclosure of facts made by client (in the absence of personal knowledge), see Peck v. Chouteau, 91 Mo. 138, 3 S. W. 577, 60 Am. R. 236, *supra.*

[13]Adelman v. Rosenbaum, 133 Pa. Super. 386, 3 A. (2d) 15; Dishaw v. Wadleigh, 15 App. Div. (Hun.) 205, 44 N. Y. S. 207; Annotations, 86 A. S. R. 408, 20 A. L. R. 116, 99 A. L. R. 415.