John DUERSCHERL and Jon J. Duerscherl, Plaintiffs,

v.

Tom FOLEY, Ramsey County Attorney, and County of Ramsey, a political subdivision of the State of Minnesota, Defendants.

No. 3–86 CIV 686.

United States District Court, D. Minnesota, Third Division.

June 25, 1987.

---

Maun, Green, Hayes, Simon, Johanneson and Brehl by Seth M. Colton, St. Paul, Minn., for plaintiffs.

Tom Foley, Ramsey Co. Atty. by Kevin Short, Asst. Ramsey Co. Atty., St. Paul, Minn., for defendants.

## ORDER

ALSOP, Chief Judge.

The above-entitled matter comes before the court upon plaintiffs' motion for partial summary judgment and defendants' motion to dismiss or alternatively for summary judgment. Because defendants' have submitted and referred to matters outside the pleadings, their motion will be treated as one for summary judgment pursuant to Fed. R. Civ. P. 12(c).

## BACKGROUND

The convoluted factual and procedural background of this case is comprehensively recited in *Voss v. Duerscherl*, 384 N.W.2d 499 (Minn.Ct.App.1986). Both the above-cited case and the instant lawsuit are the product of an attempt by Ramsey County on behalf of Diana Mandell Voss to determine paternity of her son who was born on December 9, 1969. Pursuant to its obligation created by Minn. Stat. 257.69, the Ramsey County Attorney's Office commenced a paternity action on May 20, 1982. The sole named defendant was Terry Allen

Duerscherl, the putative father. On June 23, 1982, the first trial court ordered the mother, the child, and the putative father to submit to a blood test. Just prior to his scheduled test, the putative father died.

On December 12, 1982, a second trial court substituted as party defendant Kay L. Howard, decedent's personal representative, for Terry Duerscherl, and denied the County's motion to require blood tests from Terry Duerscherl's relatives (father John Duerscherl, brother Jon Jay Duerscherl, and sister Gloria Duerscherl De-Wolfe) because they were not parties to the action. In January 1983, the County withdrew its motion to join decedent's relatives as additional party defendants and to require blood tests of these relatives.

In 1983, the Minnesota Legislature amended the Parentage Act, to read as follows:

Subdivision 1. Blood Test Required. The court may, and upon request of a party shall, require the child, mother, or alleged father to submit to blood tests ~~or genetic tests, or both.~~ *If the alleged father is dead, the court may, and upon request of the parties shall, require the decedent's parents, brothers, and sisters or both to submit to blood tests. However, in a case involving these relatives of an alleged father, who is deceased, the court may refuse to order blood tests if the court makes an express finding that submitting to a test presents a danger to the health of one or more of these relatives that outweighs the child's interests in having the tests performed. Unless the person gives consent to the use, the results of any blood tests of the decedent's parents, brothers, or sisters may be used only to establish the right of the child to public assistance including but not limited to social security and veterans' benefits. The tests shall be performed by a qualified expert appointed by the court.*

Minn. Stat. § 257.62, subd. 1 (effective date June 10, 1983).

On September 8, 1983, a third trial court denied the County's motion for blood tests of decedent's relatives because the relatives had no notice of the hearing or the motion. On February 16, 1984, a fourth trial court substituted as defendant decedent's father John Duerscherl, and ordered the decedent's father, brother, and sister to submit to blood tests pursuant to Minn. Stat. § 257.62, subd. 1. John G. Gisselquist represented the decedent's relatives at the February 16 hearing. The decedent's relatives did not appear for testing and on December 17, 1984, a fifth trial court issued an order served on decedent's father and brother to show cause for contempt of court for failure to appear at the court ordered blood tests. Decedent's sister was unavailable for service.

On February 28, 1985, a sixth trial court denied the contempt motion noting that John Duerscherl was willing to take the blood test if the blood is drawn by his own physician because of his high blood pressure and phlebitis and that Jon Jay Duerscherl was confused as to the specific time and place to take the test. The court indicated that it had jurisdiction over the decedent's relatives by virtue of the order entered on February 16, 1984, and by virtue of the present order to show cause served on John and Jon Jay Duerscherl on January 28, 1985. During the course of the hearing, the attorney representing the Duerscherls, Mr. Bans, argued that Minn. Stat. § 257.62 cannot apply retroactively to these individuals. The court rejected counsel's argument on the grounds that the February 16, 1984, order, which was not appealed, was res judicata on this issue. The court's order does not indicate that Duerscherls' counsel argued that the court's jurisdiction was defective because the Duerscherls were not served with a summons and complaint.

On April 9, 1985, a referee denied the Duerscherls' motion to vacate the February 28, 1985 order or alternatively to dismiss the action in its entirety. On May 21, 1985, the matter was remanded by a seventh trial court to a second referee for a determination of whether the court had personal jurisdiction over the Duerscherls. That court expressed concern that persons can be sub-

jected to blood tests without being made parties to the litigation. On September 18, 1985, a second referee issued an order approved by an eighth trial court stating the February 16, 1984 order remained in full force and effect, saying:

> The parties from whom the blood tests have been sought have suffered no prejudice, having received full notice, and opportunity to appear and have in fact done so.
>
> Minn. Stat. § 257.62 provides that, in a case of the death of an alleged father, the court shall, upon the request of a party order the decedent's parents or brothers and sisters to submit to blood testing. It does not require that they can be made parties to a lawsuit.

On April 1, 1986, the Minnesota Court of Appeals concluded that relatives of a deceased putative father must be served with a summons and complaint before they can be required to submit to blood tests. In addition, they expressly declined to resolve several additional claims which were asserted by the Duerscherls, one of which was whether their state and federal constitutional due process and privacy rights were violated.[1]

On August 1, 1986, plaintiffs John and Jon Jay Duerscherl commenced the instant action against Tom Foley, Ramsey County Attorney and Ramsey County. In their lawsuit, plaintiffs allege a § 1983 action and a pendant state law claim based upon abuse of process.

## DISCUSSION

### A. Procedural Due Process.

The plaintiffs assert a claim under 42 U.S.C. § 1983, alleging that they are entitled to damages because defendants violated their right to due process. To state a claim under 42 U.S.C. § 1983, the plaintiffs must allege and show that they were deprived of a federal right by a person acting in the color of state law. E.g., Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920,

1923–24, 64 L.Ed.2d 572 (1980). The fourteenth amendment prohibits government action which would deprive "any person of life, liberty or property without due process of law." Due process claims are generally subjected to a two part analysis: (1) is the asserted interest protected by the due process clause; and (2) if so, what process is due. Ingraham v. Wright, 430 U.S. 651, 672, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977). In the instant case, the plaintiffs have failed to allege or show that the asserted interest is protected by the due process clause.

■ The court will assume for purposes of this motion that plaintiffs have a federally protected liberty interest or right in not having their blood tested without some due process. The plaintiffs concede, however, that there was no actual deprivation of this right or interest because the plaintiffs' blood was not tested. Instead, the plaintiffs argue that defendants' failure to serve a summons and complaint on the plaintiffs, in and of itself, constitutes a deprivation of a federally protected right, namely a liberty and/or property right. This court disagrees.

The Supreme Court recently stated: "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." Olim v. Wakinekona, 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983). Contrary to the instruction of the Supreme Court, plaintiffs are requesting nothing more than a determination that process is an end in itself. Understandably, the plaintiffs have failed to cite and the court has not located any authoritative or persuasive case law suggesting a person has a liberty or property right in being served with a summons and complaint. Instead, the requirement of service of a summons and complaint has been recognized as one aspect of the process which an individual may be due prior to governmental action which would cause a deprivation of life, liberty, or property.

---

1. The issue of whether the Duerscherls must submit to a blood test continues to be the source of ongoing litigation with the most recent pronouncement coming from the Minnesota Court of Appeals in Voss v. Duerscherl, 408 N.W.2d 161 (Minn.Ct.App.1987).

**1368**

However, the court need not concern itself with what process is due until the plaintiff shows that the asserted interest is protected by the due process clause. In the present case, the plaintiffs have simply failed to show an actual deprivation of a cognizable liberty or property right.

■ Separate and independent grounds for granting defendant Foley's motion for summary judgment are that he is entitled to absolute immunity and/or qualified immunity. While a qualified immunity from damages should be the general rule for executive officials charged with constitutional violations, special functions of certain officials necessitate absolute immunity. *Butz v. Economou*, 438 U.S. 478, 508, 98 S.Ct. 2894, 2911–12, 57 L.Ed.2d 895 (1977). In *Butz*, the Supreme Court considered whether agency officials should be entitled to absolute immunity from actions relating to their initiation and handling of administrative proceedings. After comparing the duties of a prosecutor to those of the agency officials, the court held that these agency officials were performing functions sufficiently analogous to those of a prosecutor and should be entitled to absolute immunity for such acts. *Id.* 515–16, 98 S.Ct. at 2915–16. The court noted several important similarities between the function of a criminal prosecutor and that of an agency official justifying absolute immunity. First, the agency official had the discretion to initiate the administrative proceedings raising the possibility that the targeted individual will retaliate in the courts. Second, the administrative proceeding itself provides an opportunity to challenge the legality of the proceeding.

■ In the instant case, the county attorney, although assigned the responsibility to pursue paternity actions on behalf of indigent mothers and the public authority charged by law with support of the child, has discretion as to whether there is sufficient evidence to commence an action against a particular putative father. In

addition, as was demonstrated in *Voss*, the court hearing the paternity action will provide a forum for challenges to the legality of the county attorney's actions. Consequently, the court is satisfied that the commencement and handling of a paternity action by a county attorney is sufficiently analogous to the prosecution of criminal cases so as justify the granting of absolute immunity.

■ If Foley was not entitled to absolute immunity, he would certainly be entitled to qualified immunity. Foley is liable to the plaintiffs only if he violated clearly established statutory or constitutional rights which a reasonable person in his position should have known about. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This court may determine at the summary judgment stage whether the alleged conduct violated clearly established case law of which a reasonable official would have known. *Warren v. City of Lincoln*, 816 F.2d 1254, 1261 (8th Cir.1987). In the present case, the court has little difficulty concluding that the alleged conduct does not violate clearly established case law.[2]

As mentioned above, plaintiffs have failed to cite and the court has failed to locate any authoritative or persuasive case law supporting the proposition that an individual has a property or liberty interest in being served with a summons and complaint in the context of statutory blood tests. *See, e.g., Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (no clearly established law regarding warrantless wiretap until Supreme Court decision in 1972); *Schlothauer v. Robinson*, 757 F.2d 196 (8th Cir.1985) (law unclear on warrantless entry to make arrest before *Payton*). Accordingly, the court concludes that defendant Foley is entitled to qualified immunity from damages.

A separate and independent basis for granting defendant Ramsey County's motion for summary judgment is a lack of a

---

**2.** Obviously, the qualified immunity issue is intertwined with the issue of whether plaintiffs have a liberty or property interest in being served with a summons and complaint. Failure

to show that the asserted interest is protected by the due process clause essentially establishes the defense of qualified immunity.

custom policy. In *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court stated that municipalities were suable under § 1983 if the:

> Action ... alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers. Moreover, although the touchstone of the Section 1983 action against a government is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other Section 1983 'person', by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels.

"Policy" can be established by a single act of a person or of a body if that person or body has been delegated with the final policy-making authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). In the instant case, however, the person making the decision not to serve plaintiffs with a summons and complaint were not the final policy-makers for the Ramsey County Attorney's Office. The person handling and supervising the case of *Voss v. Duerscherl*, were delegated authority to handle the case but not to make final policy-making decisions on behalf of the Ramsey County Attorney's Office.

## B. *Abuse of Process.*

Plaintiffs allege that defendants utilized Minn. Stat. § 257.62, subd. 1 to determine parentage of the son of Diana Mandell for the psychological benefit of Diana Mandell and her son. Because § 257.62 expressly limits the use of the results from the blood tests to establishing the right of the child's public assistance, plaintiffs argue that the alleged use is an ulterior purpose and, therefore, defendants are attempting to use § 257.62 to accomplish an end not within the scope of the proceeding.

The two central elements for an action for abuse of process are (a) the existence of an ulterior purpose, and (b) the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether such result might otherwise be lawfully obtained or not. *See Hoppe v. Klapperich*, 224 Minn. 224, 28 N.W.2d 780, 786 (1947).

The plaintiffs failed to make a showing sufficient to establish an existence of the essential elements of abuse of process. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Assuming the alleged ulterior purpose is not a legitimate use of § 257.62,[3] plaintiffs have failed to offer any evidence, in the form of affidavits or otherwise, tending to establish the alleged ulterior purpose.

Based upon the record as presently constituted and the foregoing discussion,

IT IS ORDERED That defendants' motion for summary judgment be and the same hereby is granted.

IT IS FURTHER ORDERED That plaintiffs' motion for partial summary judgment be and the same hereby is denied.

IT IS FINALLY ORDERED That the Clerk enter judgment as follows:

> IT IS ORDERED, ADJUDGED, AND DECREED That plaintiffs John Duerscherl and Jon Jay Duerscherl have and recover nothing in this action and that the action is hereby dismissed with prejudice.

---

**3.** The court is skeptical that the secondary purpose of establishing parentage for the psychological benefits of the mother and child is not within the scope of the proceeding.