**In re Petition Regarding ASSIGNMENT OF JUDGES IN THE NINTH JUDICIAL DISTRICT.**

**No. C6–87–1435.**

Supreme Court of Minnesota.

Dec. 10, 1987.

district. The original version of this section, enacted in 1982, states:

> 487.191. MERGER WITH DISTRICT COURTS. One year following certification to the secretary of state of intention to reorganize the trial courts by a majority of the district judges and a majority of the county or county municipal judges of a judicial district, there shall be one general trial court of the judicial district to be known as the district court, which shall also be a probate court.
>
> Upon the effective date of a judicial district reorganization, the district court, except in the second and fourth districts, shall also exercise the powers, duties, and jurisdiction conferred upon courts by chapters 360, 484, 487, 491, 492, 493, and 525.
>
> Upon the effective date of a judicial district reorganization of the second or fourth districts, the district court shall also exercise the powers conferred upon courts by chapters 488A, 492, and 493. Notwithstanding any other law, the county or county municipal judges of the district in office on the effective date of a reorganization shall be district judges and shall continue in office for the balance of the term for which they were elected or appointed and shall be entitled to run for reelection as incumbent judges of the district court.

1982 Minn.Laws ch. 398, § 8. In subsequent amendments, the legislature has accelerated the effective date of the reorganization in four districts (districts 2, 3, 4, and 7; 1986 Minn.Laws 1st Sp. ch. 3, art. 2, § 42), and clarified that all judges in a reorganized district run for reelection on a districtwide basis. 1984 Minn.Laws ch. 494, § 1.

At the outset, it is important to note that this statute confers equal jurisdiction on all judges in a reorganized district. Any suggestion to the contrary, (*i.e.*, that a particular judge or group of judges in a reorganized district lack jurisdiction to hear and determine a matter that is properly brought before the court) raises significant liability issues (*see, e.g., Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565

### ORDER

Pursuant to the administrative authority of the chief justice set forth in Minnesota Statutes, section 2.724, and based on a review of the materials submitted in this matter and the attached memorandum,

IT IS HEREBY ORDERED that the request for relief set forth in the petition is denied.

### MEMORANDUM

This memorandum discusses the effect of Minnesota Statutes, section 487.191, the so-called voluntary unification statute, on the assignment of judges within a judicial

(1984); *Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Hoppe v. Klapperich,* 224 Minn. 224, 28 N.W.2d 780 (1947)) and is an invitation to costly litigation.

■ Most of the judicial districts certified their intention to reorganize in the form of reorganization "plans." The legislature acknowledged this format in the amendment to section 487.191 that accelerated the effective date of reorganization in several districts. In enacting and amending section 487.191, however, the legislature did not repeal existing statutes regarding the administrative authority of the chief judge of a judicial district and the administrative authority of the chief justice; with respect to the chief judge, the statutes state:

> In each judicial district, the chief judge, subject to the authority of the chief justice, shall exercise general administrative authority over the courts within the judicial district. *The chief judge shall make assignments of judges to serve on the courts within the judicial district, and assignments may be made without the consent of the judges affected.* The chief judge may assign any judge of any court within the judicial district to hear any matter in any court of the judicial district. When a judge of a court is assigned to another court the judge is vested with the powers of a judge of the court of assignment. A judge may not be assigned to hear matters outside the judge's judicial district pursuant to this subdivision.

Minn.Stat. § 484.69, subd. 3 (emphasis added). With respect to the chief justice, the statutes state:

> The chief justice shall exercise general supervisory powers over the courts in the state, with powers including, but not limited to:
>
> (a) Supervision of the courts' financial affairs, programs of continuing education for judicial and nonjudicial personnel and operations and planning research;

> (b) Serving as chief representative of the court system and as liaison with other governmental agencies for the public; and
>
> (c) Supervision of the administrative operations of the courts,
>
> The chief justice may designate other justices or judges to assist in the performance of duties.

Minn.Stat. § 2.724, subd. 4. These provisions allow the chief judge, subject to the supervision of the chief justice, to make assignments of judges within the district without the consent of the judges affected. Limitations, if any, upon this authority must be implied by operation of section 487.191.

Repeal by implication is not favored; the legislature has stated:

> When a law purports to be a revision of all laws upon a particular subject, or sets up a general or exclusive system covering the entire subject matter of a former law and is intended as a substitute for such former law, such law shall be construed to repeal all former laws upon the same subject. When a general law purports to establish a uniform and mandatory system covering a class of subjects, such law shall be construed to repeal existing local or special laws on the same class of subjects. In all other cases, a later law shall not repeal an earlier law unless the two laws are irreconcilable.

Minn.Stat. § 645.39. Section 487.191 does not purport to be a revision of all laws upon the administration of the trial courts. It does not set up a general or exclusive system covering the entire subject of trial court administration. There are no local or special laws involved. Therefore, section 487.191 can be construed to repeal the broad assignment powers of a chief judge and the chief justice set forth in sections 2.724 and 484.69 only if the provisions of section 487.191 and sections 2.724 and 484.-69 are irreconcilable.

These provisions do not appear to be irreconcilable. A reasonable construction of section 487.191 is that it does *not* grant judges the authority to limit a chief judge's assignment power (and, consequently, the

chief justice's assignment power) by the adoption of reorganization "plans." This is reasonable because a contrary construction (*i.e.*, allowing the judges to limit the assignment of certain judges within the district) could defeat the purpose of unification as it would permit both the temporary and permanent continuation of the two-tier trial court by guaranteeing assignments that existed prior to reorganization; it would be reasonable for the legislature to avoid this result. In fact, the legislature refused to enact such "grandfathering" provisions and instead created a study commission on court reorganization. *See* H.F. 655, 73rd Sess. § 4 (as amended as of April 18, 1983) (initial version of the companion bill, S.F. 742, was identical); 1983 Minn.Laws ch. 359. That commission unanimously recommended that the legislature should not enact "grandfather" provisions. *Court Consolidation Study Commission Final Report*, at 8 (Judicial Planning Committee Feb. 1984) (indicating that both the district and county judges were against such provisions). Thus, the assignment powers of a chief judge and the chief justice are unaffected by the provisions of a reorganization plan filed pursuant to section 487.191.

This does not mean that a chief judge is prohibited from considering the assignment provisions of a reorganization plan when making assignments. It would be inappropriate, however, for a chief judge to treat the provisions of the plan as binding and fail to consider all the facts bearing upon the assignment discretion provided by section 484.69. *See State v. Lambert*, 392 N.W.2d 242 (Minn.1986) (constitution does not prevent judges from agreeing to common set of guidelines to achieve greater uniformity in misdemeanor and gross misdemeanor sentencing, so long as judges give defendants an opportunity to be heard, consider all the facts bearing on exercise of sentencing discretion given by legislature, and treat guidelines only as general nonbinding guidelines).

The petitioner is not, of course, seeking to enforce the grandfather clause of the unification document and thus limit his present and future judicial work to the type of matters within his jurisdiction as a judge of the county court as existed prior to the effective date of the Ninth District unification. To the contrary, he recognizes that he and the other former judges of the county court are now judges of the district court with full powers of that office and he seeks to be assigned to the full duties of a judge of the district court which now encompass all judicial duties within the district. Whether such duties were formerly the responsibility of the county court or the district court is not relevant.

█ In making assignments of judges to geographic areas as well as to individual cases, the chief judge has many factors to consider. Economics resulting from the use of services of judges so as to reduce the time and expense of travel without loss of convenience to the public or of trial or decisional efficiency is an important one of those factors. Absent a showing that they are erroneous, the facts relevant to current travel patterns recited as the underlying basis for the Technical Assistance Report dated May 12, 1987 and entitled "Judge Travel in the Minnesota District Courts for the Ninth Judicial District" prepared by the National Center for State Courts should be helpful to the chief judge in making judicial assignments in this vast geographical area designated as the Ninth Judicial District.

█ Although it may be appropriate for a chief judge to determine, based on a consideration of all the facts, that assignments should be made according to the old county-district court distinctions set forth in the assignment provisions of a reorganization plan, there is some length of time beyond which this becomes an abuse of discretion. Indefinite assignments of a particular judge or group of judges to handle traffic matters, for example, would constitute an abuse of discretion. Such abuse can, and will, be corrected by the chief justice pursuant to the administrative authority provided by section 2.724.